Argued December 17, 1929; affirmed February 25; modified on petition for rehearing May 20; motion to recall mandate and second petition for rehearing denied June 17, 1930

WHETSTONE *v.* ROGUE RIVER VALLEY CANAL CO.

(285 P. 229, 288 P. 406)

*E. E. Kelly* of Medford for appellant.

*Don R. Newbury* of Medford (Newbury & Newbury of Medford, on the brief) for respondent.

BELT, J.   Plaintiff brings this action to recover damages for loss of crops in 1921 and 1922, alleged to have been caused by failure of defendant to deliver

water for irrigation purposes to three separate tracts of land. Verdict was had for plaintiffs:

| | |
|---|---|
| For loss of corn | $207.50 |
| For loss of alfalfa | 190.00 |
| For loss of melons | 62.00 |
| Total | $459.50 |

and judgment was entered in accordance therewith. Defendant appeals, assigning as principal error the refusal of the trial court to direct a verdict in its favor.

The court instructed the jury relative to the measure of damages that, in the event of a verdict for plaintiff, he would be entitled to recover the difference between the market value of the crops produced and such value of the crops that would have been produced had defendant not breached its contract, less the cost of cultivation, harvesting and marketing the same: *Laur et al. v. Walla Walla Irrigation Co. et al.,* 118 Or. 520 (247 P. 753). Defendant does not object to the law as declared by the court, but asserts there is no evidence to support it.

■ The land in question is known as desert land. The 18-acre tract upon which corn was planted was leveled in 1912 and plaintiff testified in substance that excellent crops had been produced on it every year since, when properly irrigated. In the early spring of 1922, plaintiff says he planted a fine grade of corn and there was a "perfect stand"—"the finest I had ever seen" —but that during the irrigating season, water sufficient for only the west six rows of corn was furnished, although the entire tract was adapted to irrigation and was substantially the same character of soil. Plaintiff testified that, by reason of failure of water, the entire

crop of corn dried up with the exception of the six rows above mentioned. The plaintiff says the rows which were irrigated produced an excellent crop—"about 8 tons to the acre." Based on the amount of corn produced from the six rows, plaintiff estimated he sustained a loss of 104 tons on the entire tract, i. e., such an amount as would have been produced had water been furnished in accordance with the contract. He also testified that corn ensilage was worth from seven to nine dollars per ton in that vicinity and that it cost one dollar per ton to harvest the crop and place it in the silo. Plaintiff and his wife did all the work of cultivating and were not obliged to incur any expense on that account. Certainly this is evidence to support the finding of the jury relative to damages sustained for loss of corn crop. We can not agree with defendant that the six rows did not furnish a reasonable basis for estimating the probable crop loss on the entire tract.

■ Plaintiff was asked: "Mr. Whetstone, during your testimony yesterday I understood you to say that the ensilage down there was worth from seven to nine dollars a ton—now state what it would cost you to harvest it and place it in the silo," and answered, "About a dollar a ton."

"Q. Then you want to be understood that the value of that after all of the costs were paid would be from six to eight dollars a ton?

"A. Yes, sir."

Defendant, after answer, objected and moved to strike it because it was "incompetent, irrelevant, and immaterial." It is now argued that the witness had shown no qualification to testify as an expert on market value and that his opinion did not take into

account the added cost of cultivation. Had the objection been thus specific, we would consider this assignment of error, but believe under the general objection made it is not tenable. Similar testimony was offered by plaintiff relative to loss of corn on the 5.71-acre tract.

■ As to loss of alfalfa on the 38-acre tract, plaintiff testified in substance that a good crop was produced on a narrow strip on account of seepage from an irrigation ditch. He said the soil was substantially the same on the entire tract and that it was in good state of cultivation. In response to the question: "Now Mr. Whetstone, based upon your experience as an irrigator, state whether if the Canal company had provided you with the water to irrigate the rest of the tract as the small area that was provided with irrigation from this seepage from the ditch, whether in your judgment the rest of the tract would have produced the same quantity and grade of alfalfa that this did," plaintiff answered without objection, "It would." He further testified in substance that, judging from the alfalfa grown next to the ditch, he could have produced two and one-half tons per acre if water had been delivered as agreed, and that alfalfa was worth ten to twelve dollars per ton in the field. After reviewing the record, we think there is ample testimony to support the finding of the jury relative to loss of this crop. We reach a similar conclusion concerning the loss of the melon crop. It would greatly extend this opinion were we to recite the evidence in detail.

The court fairly submitted this cause to the jury and it is believed there is some evidence tending to support its findings. We are not, under the constitu-

tion, permitted, as counsel well knows, to substitute our opinion on the facts for that of the jury.

CosHow, C. J., and Bean, J., and Hamilton, A. A. J., concur.

---

Modified on petition for rehearing May 20, 1930

## On Petition for Rehearing
### (288 P. 406)

■ BELT, J. Appellant earnestly insists there is no evidence to support claim for any damages on account of alleged loss of melon or alfalfa crops. We have again examined the transcript of evidence and conclude that defendant's contention in reference to the melon crop must be sustained. Relative to the loss of the melon crop, the plaintiff testified as follows:

"Q. And how much in melons did you have planted there?

"A. A half an acre.

"Q. A half an acre of melons?

"A. Yes, sir.

"Q. Did you ever grow any melons on premises of that kind?

"A. Well not to sell, but I have on other ground.

"Q. I say on premises of that kind?

"A. No, not to sell,—I have growed them up there, yes.

"Q. You have grown them on those premises?

"A. Yes, sir.

"Q. Have you grown them when you got water there?

"A. Yes, sir.

"Q. In 1922, if you had gotten water there could you have grown the same kind of melons that you grew the other time?

"A. Yes, sir.

"Q. In 1922 how much would the crop of melons, or how much would that half acre been worth, per acre?

"A. About three hundred dollars an acre.

"Q. About three hundred dollars an acre for melons?

"A. Yes, sir.

"Q. And a half acre would have been how much?

"A. A hundred and fifty dollars.

"Q. State how those melons did come out.

"A. I didn't get scarcely any of them.

"Q. Well how much worth of melons did you get?

"A. We just got a few to use,—a very few.

"Q. Well how much worth did you get to use,— how much would they have been worth?

"A. Why I don't think there was,—that they was worth over ten dollars, what we got.

"Q. Not worth over ten dollars?

"A. Yes, sir."

This testimony is all that appears in the record relative to such issue and is insufficient to submit this phase of the case to the jury. Such does not constitute evidence of market value. There was no showing as to cost of cultivation, harvesting, or marketing of the crop: *Laur et al. v. Walla Walla Irr. Co.*, 118 Or. 520 (247 P. 753).

While the evidence is very meager concerning the alfalfa crop we think it is sufficient to sustain the verdict of the jury.

Since the items of damage in the verdict are segregated, we deduct $62 as found by the jury for loss of melons. The judgment against defendant will therefore be affirmed in the sum of $397.50. In view of this substantial reduction of damages on appeal, defendant is entitled to recover costs and disbursements in this court.

Coshow, C. J. and Bean, J. concur.

Brown, J. not sitting.